No. 18,178.

No. 18,179.

MARIE G. WEBER v. STANLEY A. WILLIAMS, ET AL.

(324 P. [2d] 365)

Decided April 14, 1958.   Rehearing denied May 5, 1958.

Mr. JAMES T. BAYER, for plaintiff in error.

Messrs. EARLY & KELLER, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THIS proceeding on error involves two cases, in which the parties are identical, and are submitted and considered together.

From the two records before us, it appears that plaintiff in error, Marie G. Weber, to whom we will refer as Weber, was defendant in each case in the trial court, and on May 1, 1950, was the owner of ranch property located in Grand County, Colorado. On that date Weber executed her note payable to defendant in error, Fairman Wallace Taber, hereafter referred to as Taber, and one of the plaintiffs in each case in the trial court, the note being in the amount of $16,250.00 and secured by a second deed of trust on said ranch property.

On December 19, 1951, the defendants in error, Stanley A. Williams and Esther Williams, to whom we will refer to as the Williams, with Taber filed their complaint in the District Court of Grand County, Colorado, Case No. 1012, naming as defendants Weber and Carl F. Fischer, Public Trustee of Grand County. In their complaint they allege that the Williams are the legal and equitable owners by deed (from whom is not stated) of the ranch property, subject to the encumbrance above mentioned; that the records of the county clerk indicate that Weber has title of record to the ranch property,

subject to the said encumbrance; that Taber, through the Public Trustee, Fischer, had endeavored to foreclose his deed of trust, but the Williams believe said foreclosure proceedings to be void because prematurely instituted; that Fischer has no interest in the property or note or deed of trust of Taber and he should be requested to surrender the same to the district court for court foreclosure thereof. Taber sought court foreclosure of his deed of trust. The note and deed of trust state the address of Weber to be "Sun Valley Ranch, Grand Lake, Grand County, Colorado." No personal service on Weber was had or attempted in Colorado or elsewhere.

A motion for an order for publication of summons, signed and verified by the attorney for the Williams and Taber, was filed simultaneously with the complaint. In the motion it is alleged that *Weber's address is unknown to plaintiffs;* that Weber is believed to be a resident of Chicago; that efforts to locate Weber have been made by plaintiffs' attorney, by the Clerk of the District Court of Denver and by her former attorney, all to no avail. On presentation of this motion, an order for publication of summons was entered, publication had, foreclosure proceedings completed and, on July 13, 1953, a sheriff's deed to the ranch property was issued to Taber.

On August 4, 1953, the Williams and Taber brought another action in the District Court of Grand County, No. 1073, against Weber and all unknown persons who claim any interest in the property described in case No. 1012, together with other property described in the complaint; the purpose of this second suit was to quiet the titles to said lands in the Williams and Taber. Summons was issued August 3, 1953. As in the first action, no personal service was had or attempted on Weber in Colorado or elsewhere.

Here again a motion for an order of service by publication was signed and verified by the attorney for the Williams and Taber and was filed simultaneously with the complaint. In this motion it is alleged:

"This is an action * * * in rem; some of the defendants * * * are unknown persons * * * Weber is a nonresident of the State of Colorado or has departed from the State without intention of returning * * * and * * * cannot be served by personal service in the State of Colorado:

"That search has been made of the public records of the City and County of Denver, State of Colorado, and of the records, of Hot Sulphur Springs, Colorado, and the County of Grand, and of telephone and other available directories in the said cities and counties; various inquiries have been made from persons who might have information concerning the defendants; endeavors have been made to serve defendants personally at any Colorado addresses available; but said efforts have been to no avail. *The last known address of the defendant, Marie G. Weber, is Sun Valley Ranch, Grand County, Colorado,* and, except as herein stated, that the addresses and last known addresses of each defendant is unknown." (emphasis supplied).

On presentation of this motion an order for publication was entered and publication had. The clerk of the court mailed a copy of summons and complaint to:

"Marie G. Weber — Sun Valley Ranch, Grand Lake, Grand County, Colorado."

On October 13, 1953, the trial court entered an order adjudging all defendants in default and on the same day entered its decree quieting title in Williams to certain of the property and in Taber to the balance of the property.

On June 25, 1956, Weber filed her motion in No. 1012 seeking to have the purported service of process quashed, foreclosure decree vacated and sheriff's sale and deed set aside, for the reason that Weber had not been served with process as required by law. On the same day Weber filed her motion in No. 1073 seeking to have the purported service of process quashed and the decree quieting the titles vacated, for the same reasons urged in No. 1012.

Hearing on both motions was had on August 13, 1956,

at which time sworn testimony of the Williams was taken. Their uncontradicted testimony was to the effect that at all times subsequent to July 1951, they have resided upon and been in possession of the ranch property; that at all times subsequent to September 19, 1951, they had known that mail addressed to Weber or her husband at 2501 Blue Island Avenue, Chicago 8, Illinois, c/o American Brake Shoe Company, Medical Department, reached the Webers; that they, the Williams, had carried on a regular correspondence with Weber and her husband subsequent to September 19, 1951, and up to within three weeks of August 13, 1956, at which time Weber visited the Williams at the ranch property in Colorado. The Williams further testified that their attorney, he also being the attorney for Taber, never made any inquiry of them as to a "last known address" of Weber and her husband.

There also appears in the record an affidavit of Weber, sworn to in Lake County, Illinois, July 3, 1956, filed in court August 13, 1956, wherein Weber states she and her husband at all times from May 1951 to May 1954 resided at 6312 Roscoe Street, Chicago, Illinois; that she was never personally served with summons or complaint and had never received such through the mails or otherwise. The Williams and Taber offered no evidence and filed no counter affidavits.

Briefs were submitted and on October 10, 1956, the trial court entered its orders denying the motions and dispensing with motions for new trial. The court made no findings of fact.

Weber seeks review of the orders denying her motions to vacate the judgments. The same or similar questions are presented in both cases and both cases are presented in one set of briefs. We dispose of both cases in this one opinion.

■■■ The judgment in the first case, the foreclosure proceeding, purported to deprive Weber of her property rights; namely, her possessory rights, her legal title and

her right of redemption. Nothing can be more firmly established in our law than the principle that one may not be deprived of his property except by due process of law. Due process under applicable rules requires notice, by actual or substituted service of process. Admittedly there was no actual service. The order authorizing service by publication was obtained by a verified motion, which no doubt was made honestly and in good faith by plaintiffs' attorney; however, it contained a statement that was known by plaintiffs, the Williams, to be false. The affidavit was made in behalf of the Williams, and, in determining the question of the validity of the substituted service, they are answerable therefor. Their failure to disclose Weber's whereabouts to the extent of their knowledge was gross fraud on the trial court, a fraud designed to prevent, and which did prevent, Weber from receiving notice. The judgment thus obtained is void and subject to collateral or direct attack at any time. It was the duty of plaintiffs, in obtaining an order for substituted service, to comply strictly with the rules of civil procedure and the statutes relating thereto, to the end that the defendant may have the required notice of the pendency of the action. Here, two of the plaintiffs had actual knowledge of the address of Weber, an address where mail regularly reached her, and yet they permitted the court to proceed on the belief induced by their counsels' verified motion that Weber's address was unknown and could not be obtained by due diligence. Had the Williams disclosed the truth to the court, personal service outside the state could and would have been had on Weber in Chicago; or, failing that, the clerk of the court could, and no doubt would, as required by law, have mailed a copy of the summons and complaint to Weber in Chicago, which it appears would have been received by Weber, as were letters sent to her by the Williams, at her known Chicago address.

The judgment in the second case, the quiet title action, purported to deprive Weber of any interest she might

have in the property. Here again, due process is required. In this second case, virtually the same steps were taken to obtain service as were taken in the first case. Again, the trial court was falsely informed that Weber's address was unknown, that her last known address was "Sun Valley Ranch, Grand County, Colorado." The clerk's record shows that on August 10, 1953, he mailed a copy of the summons and complaint to Weber at "Sun Valley Ranch, Grand Lake, Grand County, Colorado." Curiously the record is silent as to what became of this letter. The affidavit of Weber is definite that she did not receive it. The evidence is undisputed that the Williams were then in possession of and living on the Sun Valley Ranch.

This court's decision in *Coppinger v. Coppinger,* 130 Colo. 175, 274 P. (2d) 328, is controlling in the two cases under consideration. In the *Coppinger* case, the plaintiff only failed to make full and fair disclosure as to defendant's whereabouts, whereas in the two cases before us there is a clear case of false statements made as to where Weber could be reached, statements made under oath denying knowledge of Weber's whereabouts and known by two plaintiffs to be false. The following language from *Coppinger v. Coppinger* is applicable to the situation presented by the records in these two cases:

"The second proposition presents greater difficulty, and is one which goes to the very root of the court's authority to make any orders or any valid decree whatsoever. If it be true that plaintiff in any way misrepresented the facts, either actively or merely by failure to reveal them, then it follows as a matter of course that the order directing constructive service of process by publication was invalid.

"At the outset it is pertinent to say that constructive service is in derogation of the common law making it imperative that there must be a strict compliance with every requirement of the rule or statute authorizing the same. Failure in this respect is fatal. *O'Rear v. Lazarus,*

8 Colo. 608, 9 Pac. 621. Compliance with every condition of the rule or statute must affirmatively appear from the record and the motion and affidavit upon which the order for constructive service is entered takes precedence over recitals in the judgment. *Ernst v. Colburn,* 84 Colo. 170, 173, 268 Pac. 576. The law requires that personal service shall be had whenever it is obtainable. In case service may not be had either personally, or by mailing or other substituted service, then service by publication is permissible as a final and last resort. * * *. "* * * the trial court erred for the reason that it was not incumbent upon defendant to do anything to make service of process upon him valid or regular; that the validity of the constructive service is dependent entirely upon the good faith of plaintiff and the accuracy of the statements contained in her verified motion upon which the order for publication was based; * * *. It is not a question of comparative responsibility or culpability, but one solely of whether the plaintiff in her motion for an order directing service by publication was fair with the court and set forth accurately and sufficiently the true facts and surrounding circumstances.

"In the motion and affidavit the applicant must be forthright and explicit in setting forth all of the pertinent facts in order that the court may have before it the complete picture to enable correct evaluation and determination of whether service by publication is justified or required under the circumstances. Anything short of the full disclosure of all known pertinent facts is designated in law as a fraud upon the court and renders void any decree thereafter entered. *Medina v. Medina,* 22 Colo. 146, 43 Pac. 1001; *Morton v. Morton,* 16 Colo. 358, 27 Pac. 718. To simply go through the form of legalism without a fair disclosure of existing, known facts, is of no avail."

Counsel for the Williams and Taber contend that Weber must have known of the pendency of the actions and therefore cannot at this late date urge that the

judgments be vacated because of lack of service of process. There is no evidence that she had such knowledge; even so, we find no authority holding that knowledge of the pendency of an action can be substituted for service of process. Courts acquire jurisdiction in actions in rem as well as in actions in personam by lawful service of lawful process or by voluntary appearance.

The following language, found in the 1957 Cumulative Supplement to Volume 31, Am. Jur., page 9, §446, is applicable in these two cases.

" * * * in order that a valid judgment may be rendered in a proceeding in rem or quasi in rem, every person who has an interest in the res must have legal notice of the proceeding and an opportunity to be heard."

In *Great West Min. Co. v. Woodmas of Alston Min. Co. et al.,* 12 Colo. 46, 20 Pac. 771, a case dealing with lack of service, this court said:

" * * * It follows as a logical result of the propositions before discussed that a judgment rendered without service, or upon the unauthorized appearance of an attorney, is (whenever it is made to appear by proper proceedings instituted for this purpose) void, and that all sales, or other proceedings had thereunder, are as to all persons, irrespective of notice or bona fides, absolute nullities. *Shelton v. Tiffin,* 6 How. 163. A different rule might prevail if a judgment is only attacked on the ground of fraud, and rights had been acquired on execution sales without notice of such fraud. But absence of legal service or authorized appearance is jurisdictional. Without jurisdiction, no judgment whatever will be entered, nor rights acquired thereunder."

In *Sine v. Stout, et al.,* 119 Colo. 254, 203 P. (2d) 495, a motion to vacate a judgment and cancel a sheriff's deed, which had been issued pursuant to the judgment, was denied by the trial court. The reason urged in the motion to vacate was lack of service. In reversing the trial court, this court said:

"The verified motion filed herein for publication of said summons contained no statement that Sine was a nonresident of the state, that she had departed the state without intention of returning, or that she concealed herself to avoid service of process. It was recited in the motion that defendant Sine's whereabouts were unknown, but there was no statement that she 'cannot be served by personal service in the state.' In the absence of this mandatory requirement, the motion was fatally defective and the court was without jurisdiction to proceed. The judgment and decree were consequently void and of no force or effect, and the deed a nullity. *Empire Ranch & Cattle Co. v. Coldren,* 51 Colo. 115, 117 Pac. 1005; *Millage v. Richards,* 52 Colo. 512, 122 Pac. 788; *Federal Farm Mortgage Corp. v. Schmidt,* 109 Colo. 467, 126 P. (2d) 1036."

The trial court was in error in denying Weber's motions to vacate the judgments.

The order denying Weber's motion to vacate in Case No. 1012 is reversed and the cause remanded with instructions to vacate the foreclosure decree, cancel the sheriff's sale and deed, and to grant Weber a reasonable time to answer the complaint and to proceed with the trial of the issues so presented.

The order denying Weber's motion to vacate in Case No. 1073 is reversed and the cause remanded with instructions to vacate the decree quieting title and to grant Weber a reasonable time to answer the complaint and to proceed with the trial of the issues so presented.

MR. JUSTICE MOORE and MR. JUSTICE KNAUSS not participating.